UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ATCHAFALAYA BASINKEEPER, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 15-6982** |
| **U.S. ARMY CORPS OF ENGINEERS, et al.** | **SECTION: "G"(1)** |

## ORDER

In this litigation, Plaintiffs Atchafalaya Basinkeeper, Louisiana Crawfish Producers' Association-West, and Gulf Restoration Network (collectively "Plaintiffs") allege that Defendants United States Army Corps of Engineers ("Corps") and Lieutenant General Thomas P. Bostick,[1] in his official capacity as Chief of Engineers (collectively "Defendants") failed to comply with the Clean Water Act and the National Environmental Policy Act in re-issuing the expired New Orleans District General Permit 13 ("GP-13").[2] Pending before the Court is Defendants' "Motion for Continuation of Temporary Stay of this Case."[3] Having reviewed the motion, the memorandum in support, the memorandum in opposition, the record, and the applicable law, the Court will deny the motion.

---

[1] Plaintiffs' complaint originally named as a defendant Lieutenant General Thomas P. Bostick, in his official capacity as Chief of Engineers. Lieutenant Todd T. Semonite has replaced Lieutenant General Thomas P. Bostick as the Chief of Engineers and is thereby automatically substituted as a defendant. *See* Rec. Doc. 40 at 1; Fed. R. Civ. P. 25(d).

[2] Rec. Doc. 1 at 1–2. New Orleans District General Permit ("GP-13") was formerly known as "NOD-13." *See* Rec. Doc. 40-1 at 1.

[3] Rec. Doc. 20.

1

## I. Background

*A.     Factual Background*

In the First Amended Complaint, Plaintiffs allege that this case is about the Corps' response to the expiration of GP-13 on December 31, 2012.[4] Plaintiffs allege that GP-13 is a regional "general permit" for temporary roads and other construction in wetlands in southern Louisiana that permits the authorization of the filling of wetlands by category of project, without any requirement of public notice of individual projects or project-specific environmental review pursuant to the National Environmental Policy Act ("NEPA").[5] Plaintiffs allege that although the Corps was required to provide public notice and undertake environmental reviews under the Clean Water Act ("CWA") and NEPA, when GP-13 expired in 2012, the Corps continued to authorize projects under the expired general permit for almost two years, and reissued GP-13 without complying with legal mandates for public participation and environmental review.[6]

*B.     Procedural Background*

Plaintiffs filed the original complaint on December 22, 2015.[7] Plaintiffs filed a First Amended Complaint on March 11, 2016.[8] Defendants filed a motion for voluntary remand and temporary stay of the case on May 17, 2016.[9] On June 8, 2016, the Court granted the motion in

---

[4] Rec. Doc. 12 at 1.

[5] *Id.*

[6] *Id.* at 1–2.

[7] Rec. Doc. 1.

[8] Rec. Doc. 12.

[9] Rec. Doc. 20.

part and ordered that the case be remanded and the litigation temporarily stayed for a period of 90 days.[10] The Court further ordered that Defendants submit a status report 45 days from the signing of the order detailing the actions they had taken in furtherance of the reevaluation, as well as a status report upon the conclusion of the 90-day stay.[11] On September 6, 2016, Defendants filed the instant motion for a continuation of the temporary stay of the case.[12] Plaintiffs filed an opposition to the motion on September 14, 2016.[13] With leave of Court, Defendants filed a reply on September 23, 2016.[14]

## II. Parties' Arguments

### A.     *Defendants' Arguments in Support of a Continuation of the Temporary Stay*

Defendants request a continuation of the 90-day temporary stay of the case until July 7, 2017.[15] Defendants aver that a continuation of the temporary stay is necessary for five reasons.[16] First, Defendants assert that on July 1, 2016, the Corps issued public notice of its intent to reevaluate GP-13 and solicited public comments concerning GP-13 until July 25, 2016.[17] Defendants further assert that the Corps has voluntarily ceased using GP-13 to authorize new

---

[10] Rec. Doc. 35 at 14.

[11] *Id.*

[12] Rec. Doc. 40.

[13] Rec. Doc. 43.

[14] Rec. Doc. 47.

[15] Rec. Doc. 40-1 at 1.

[16] *Id.* at 2–3.

[17] *Id.* at 2.

projects that may impact waters of the United States until the reevaluation is complete.[18] According to Defendants, "projects requesting authorization that do not fall under the purview of a different regional or programmatic permit will be evaluated under the standard permitting procedures, which provide for public notice and comment."[19] Thus, Defendants aver, Plaintiffs will have the opportunity to review and to comment on such projects while the Corps "continues its thorough reevaluation of the challenged permit."[20]

Second, Defendants aver that the Corps published a 20-day special public notice, which it posted to its website and forwarded by email to Plaintiffs' counsel and to local, state, and federal regulatory and resource agencies.[21] According to Defendants, the Corps received 373 pages of comments and supporting materials concerning the reevaluation of GP-13 within the comment period, including "lengthy comments" from Plaintiffs and Plaintiffs' counsel.[22] Defendants assert that the Corps is in the process of evaluating the letters and supporting materials.[23]

Third, Defendants assert that the Corps has submitted two status reports to the Court, as required by the Court's order, which provided "a detailed description of actions it has taken in furtherance of the reevaluation of GP-13" and other relevant events since the Court's order.[24] Defendants contend that these status reports demonstrate "the ongoing, good faith efforts"

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 2–3.

[23] *Id.* at 3.

[24] *Id.*

undertaken by the Corps to solicit suggestions from local, state, and federal regulatory authorities and resource agencies, as well as other interested parties.[25] Fourth, Defendants assert that upon completion of a revised draft of GP-13, the Corps plans to submit it for an additional period of public comment.[26] According to Defendants, the process of drafting potential modifications, providing notice, and receiving additional comments will take approximately 90 days.[27]

Finally, Defendants estimate that completing an Environmental Assessment for the revised version of GP-13 will take an additional six months.[28] According to Defendants, the process of drafting an Environmental Assessment is a "multi-disciplinary effort that requires the agency to evaluate the evidence regarding the purpose and need for GP-13, to identify reasonable alternatives to the permit, and to assess the potential environmental impacts of the permit as well as the alternative actions, in addition to listing the agencies and persons consulted."[29] Defendants contend that in light of the "extensive list of considerations that may be incorporated into the assessment," an extension of the temporary stay of proceedings for an additional nine months will conserve judicial resources and allow the parties to avoid unnecessary litigation.[30] Defendants further argue that the Corps has voluntarily ceased authorizing new work under GP-13 until the reevaluation is complete and that Plaintiffs are able to review and comment on individual projects

---

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* (citing 40 C.F.R. § 1508.9).

[30] *Id.* at 3–4 (citing *Frito-Lay, Inc. v. U.S. Dep't of Labor*, 20 F. Supp. 3d 548, 553 (N.D. Tex. 2014) (citing *Sierra Club v. Van Antwerp*, 560 F. Supp.2d 21, 24–25 (D.D.C. 2008)).

seeking authorization under the standard permitting procedures in the meantime.[31] Thus, Defendants argue, a continuation of the stay will not prejudice Plaintiffs.[32]

Defendants request that the Court grant an extension of the stay until July 7, 2017, with Defendants providing status reports of its reevaluation of GP-13 within 90, 180, and 270 days of the Court's order.[33] Defendants further propose that they notify the Court and the parties within ten days of taking final action on GP-13.[34]

## B.   *Plaintiffs' Arguments in Opposition to a Continuation of the Temporary Stay*

Plaintiffs argue that the Court has already rejected an equivalent request to stay resolution of this case until next summer and that the Court should reject Defendants' request for an extension of the temporary stay for the same reasons: (1) the delay that the Corps seeks is effectively indefinite; (2) the Corps continues to avoid admitting error; and (3) the Corps provides no guarantee that it will take any action by a certain date.[35] Plaintiffs contend that Defendants' motion "raises the prospect of indefinite delay."[36] Plaintiffs aver that Defendants' request for an extension of the temporary stay is premised on the need to conduct an Environmental Assessment, which will take an additional six months.[37] According to Plaintiffs, such an assessment is conducted to determine whether to prepare an environmental impact statement, so there is no guarantee that

---

[31] *Id.* at 4.

[32] *Id.* at 7–8.

[33] *Id.* at 4–5.

[34] *Id.* at 5.

[35] Rec. Doc. 43 at 3.

[36] *Id*. at 4.

[37] *Id.*

6

Defendants will not request further delay in July 2017 to conduct additional analyses.[38] According to Plaintiffs, analyses under NEPA can extend for years.[39]

Furthermore, Plaintiffs contend that the Corps has still not admitted error.[40] Plaintiffs aver that the Court has recognized that one of their claims is that the Corps did not perform an environmental assessment that meets the requirements of NEPA in reissuing the GP-13.[41] Plaintiffs contend that Defendants' request for delay includes six months for completing such an environmental assessment.[42] However, according to Plaintiffs, rather than owning up to its error, "the Corps seeks a voluntary 'do-over' without *vacatur*, so that it may carry on the administration of the general permit without the prospect of judicial comment on the illegality of its conduct."[43]

Next, Plaintiffs argue that a stay is unnecessary for the Corps to complete its GP-13 reevaluation and that going forward with the litigation will serve the interests of justice.[44] Plaintiffs contend that in order to extend the stay, the Corps "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to [someone] else."[45] Plaintiffs argue that Defendants have failed to

---

[38] *Id.* (citing 40 C.F.R. § 1508.9).

[39] *Id.*

[40] *Id.*

[41] *Id.* (citing Rec. Doc. 35).

[42] *Id.* (citing Rec. Doc. 40-1).

[43] *Id.* at 4–5.

[44] *Id.* at 5.

[45] *Id.* (citing *In re Davis*, 730 F.2d 176, 178 (5th Cir. 1984) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

7

meet this burden, because nothing precludes the Corps from reconsidering the permit while judicial review proceeds.[46] Plaintiffs contend that the time remaining for litigation would be minimal and a resolution on the merits could be speedy, as they have already submitted their motion for summary judgment.[47] Plaintiffs further argue that delaying the case would "circumvent justice and judicial economy" because it would allow the Corps to avoid responsibility for—and even repeat—its CWA and NEPA violations.[48]

Finally, Plaintiffs contend that further delay would prejudice Plaintiffs.[49] Plaintiffs argue that evidence in the record shows that the Corps' practice of mismanagement of the Atchafalaya Basin and Louisiana's wetlands injures the Plaintiffs' members.[50] Plaintiffs point to testimony from fishermen and an email from a Corps employee as evidence of the impact of the Corps' mismanagement.[51] Plaintiffs argue that the Corps' practice of mismanagement has included unlawfully reauthorizing the general permit at issue for over 34 years and that this type of conduct may continue without judicial review.[52] Plaintiffs also assert that they have sought a declaratory judgment in this matter to address this concern.[53] Furthermore, Plaintiffs contend that the Corps is not currently bound to maintain the status quo during a stay and that voluntary cessation of

---

[46] *Id.* at 5 (citing *Am. Farm Lines v. Black Ball Freight Serv.*, 297 U.S. 532, 541 (1970)).

[47] *Id.* at 6 (citing Rec. Doc. 27).

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.* at 7.

[52] *Id.*

[53] *Id.*

8

challenged activities should not interfere with a court's determination on the merits.[54]

## C. *Defendants' Reply in Further Support of a Continuation of the Temporary Stay*

In their reply, Defendants argue that denying the request for a continuation of the temporary stay would not speed up the process of analyzing the environmental impacts of GP-13.[55] To the contrary, Defendants assert, Plaintiffs' request that the permit be vacated would "unnecessarily divert the Corps' limited resources away from the research of the environmental impacts and the preparation of the very review that is sought by Plaintiffs."[56] Defendants further argue that they are requesting an extension of nine and a half months—not an indefinite period of time—to evaluate additional comments on the revised draft of GP-13 and to complete the environmental assessment.[57]

According to Defendants, an extension of the stay would not cause harm to Plaintiffs, because they are being provided the opportunity to review and comment "not only on GP-13 as a programmatic permit, but also on individual projects, which would have otherwise fallen under the umbrella of GP-13."[58] Defendants also assert that the Corps has fully complied with the Court's remand order and that if a continuation of the temporary stay was granted, the Corps would continue to file status reports with the Court on the progress of its GP-13 reevaluation.[59]

---

[54] *Id.* at 8 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 169–70 (2000)).

[55] Rec. Doc. 47 at 2.

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.* at 3.

Defendants argue that an extension of the temporary stay would allow the Court to monitor the progress of the reevaluation process while conserving judicial resources and avoiding unnecessary litigation.[60]

### III. Law and Analysis

*A.    Legal Standard*

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them.[61] The Court also has the inherent power to stay a matter pending before it in the interest of justice and "economy of time and effort for itself, for counsel and for litigants."[62] However, "the moving party bears a heavy burden to show why a stay should be granted."[63] Moreover, "[w]here a discretionary stay is proposed, something close to genuine necessity should be the mother of its invocation."[64]

*B.    Analysis*

Defendants seek a continuation of the Court's 90-day temporary stay for the following reasons: (1) the Corps has issued public notice of its intent to reevaluate GP-13 and Plaintiffs will have the opportunity to review and comment on projects requesting authorization while the Corps

---

[60] *Id.* (citing *Frito-Lay, Inc. v. U.S. Dep't of Labor*, 20 F. Supp. 3d 548, 553 (N.D. Tex. 2014) (citing *Sierra Club v. Van Antwerp*, 560 F. Supp.2d 21, 24–25 (D.D.C. 2008))

[61] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). *See also Black Sea Investment, Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000).

[62] *Dresser v. Ohio Hempery, Inc.*, No. Civ. A. 98-2425, 2004 WL 464895, at *2 (E.D. La. Mar. 8, 2004) (Vance, J.). *See also McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982) ("The district court has a general discretionary power to stay proceedings before it in the control of its docket and the interests of justice.").

[63] *Case v. Merck & Co.*, No. 02-1779. 2003 WL 145427, at *2 (E.D. La. Jan. 17, 2003) (Vance, J.) (citing *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985)).

[64] *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985).

10

conducts its reevaluation; (2) the Corps is in the process of evaluating the comments it received in response to its public notice of its reevaluation of GP-13; (3) the Corps has submitted two status reports, which demonstrate its good faith efforts to consider and implement suggestions from stakeholders; (4) upon completion of a revised draft of GP-13, the Corps plans to submit it for an additional period of public comment, which it estimates will take approximately 90 days; and (5) the Corps estimates that completing an Environmental Assessment for the revised version of GP-13 will take an additional six months. [65] Plaintiffs contend that Defendants have failed to demonstrate that a continuation of the temporary stay is necessary.[66] Plaintiffs further argue that the Corps has not admitted fault or provided a guarantee that it will take action by a specified date and that a continuation of the stay would harm Plaintiffs.[67]

In its prior order rejecting Defendants' request for a stay until June 30, 2017, the Court held that it would not "grant Defendants the opportunity to delay this litigation indefinitely."[68] In the interest of judicial economy, the Court instead granted a limited 90-day stay to allow Defendants time to reevaluate GP-13.[69] In reaching its decision that a 90-day stay was more appropriate, the Court noted that Defendants did not admit error and did not even provide a guarantee that they would take any action by June 30, 2017.[70] Neither of these concerns have been

---

[65] Rec. Doc. 40-1 at 2–3.

[66] Rec. Doc. 43 at 5.

[67] *Id.* at 4, 6.

[68] Rec. Doc. 35 at 13.

[69] *Id.*

[70] *Id.*

11

addressed by Defendants since the Court's prior order. Although the Court notes that Defendants have begun the process of reevaluating GP-13 and have estimated that an Environmental Assessment will take six months,[71] Defendants have still not admitted error or offered a guaranteed date by which they will take final action regarding GP-13.

Moreover, Plaintiffs have shown how a continued stay of this matter could harm them.[72] They have alleged that their members have suffered and continue to suffer economic injury and decreased enjoyment of the Atchafalaya Basin as a result of Defendants' alleged violations.[73] Defendants argue that GP-13 will not cause Plaintiffs harm during the reevaluation process, because the Corps has voluntarily ceased authorizing new work under GP-13 until the reevaluation is complete and Plaintiffs will have the opportunity to review and comment on new projects while the Corps continues its reevaluation of GP-13.[74]

However, the Corps is not bound to maintain this arrangement. In a case specifically considering a permit governed by the CWA and in rejecting the defendant's argument that the plaintiffs' claims were rendered moot once the defendant came into substantial compliance with its permit, the Supreme Court stated, "A defendant's voluntary cessation of a challenged practice ordinarily does not deprive a federal court of its power to determine the legality of the practice."[75]

---

[71] Rec. Doc. 40-1 at 2, 3.

[72] *See In re Davis*, 730 F.2d 176, 178 (5th Cir. 1984) (The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else.") (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936)).

[73] *See* Rec. Docs. 12 at 4–5; 43 at 6–7.

[74] Rec. Doc. 40-1 at 4.

[75] *Friends of the Earth v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 169–70 (2000) (internal citation omitted).

Defendants assert that denial of a continuation of the stay "would not speed up the process of analyzing the environmental impacts of GP-13," but Defendants have not shown that a denial of the continuation of the stay would cause undue harm or prejudice to Defendants.[76] Moreover, Defendants are not precluded from reevaluating GP-13 while judicial review of Plaintiffs' claims proceed, and they do not argue otherwise.[77]

### IV. Conclusion

The Court finds that Defendants have not demonstrated that a continuation of the temporary stay of this case is warranted.[78] Moreover, the Court finds that Plaintiffs have demonstrated that they could be harmed by a continuation of the temporary stay.[79] Finally, Defendants are not precluded from reevaluating GP-13 while judicial review of Plaintiffs' claims proceed.[80] The Court concludes that interests of justice mitigate against an extension of the temporary stay.

---

[76] *See In re Davis*, 730 F.2d 176, 178 (5th Cir. 1984) (The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else.") (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936)).

[77] *See Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 541 (1970) (holding that the agency, the Interstate Commerce Commission, had the power to reconsider its prior decision under its governing statute and that the power of the agency to reconsider a prior decision "does not necessarily collide with the judicial power of review."). *See also St. Bernard Citizens for Envtl. Quality, Inc., et al. v. Chalmette Refining, LLC*, 348 F.Supp.2d 765, 768 (E.D. La. 2004) (Vance, J.) (denying defendant's request for a stay even where the environmental agency had initiated enforcement actions and permit negotiations); *Apalachicola Riverkeeper v. Taylor Energy Co., LLC*, 954 F.Supp.2d 448, 459 (E.D. La. 2013) (Morgan, J.) (denying defendant's request for a stay of plaintiffs' CWA and RCRA where Coast Guard-directed force was responding to oil spill).

[78] *Case v. Merck & Co.*, No. 02-1779. 2003 WL 145427, at *2 (E.D. La. Jan. 17, 2003) (Vance, J.) ("The moving party bears a heavy burden to show why a stay should be granted.")(citing *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203 n. 6 (5th Cir. 1985)).

[79] *See In re Davis*, 730 F.2d at 178.

[80] *See Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 541 (1970).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Motion for Continuation of Temporary Stay of this Case"[81] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this ___29th___ day of December, 2016.

                                          **NANNETTE JOLIVETTE BROWN**
                                          **UNITED STATES DISTRICT JUDGE**

---

[81] Rec. Doc. 40.